The next case is United States v. Carr. Your Honor, if it pleases the Court, my name is Jeffrey Perry. I represent Mr. Carr in this matter. Your Honor, this is certainly the first time I've gone to an appellate court with a matter that essentially involves an outburst in a courtroom, but there was a very loud few minutes at the end of Mr. Carr's sentencing, and those loud few minutes were rather revealing in terms of my assertion that Mr. Carr was misled in this matter. Mr. Carr was promised, I shouldn't say promised, Mr. Carr was informed that the Court would probably give him a 30-month sentence, and of course he received an above-the-guideline 60-month sentence. I was as surprised as anyone in the courtroom, Your Honor, I had learned of the 30 months and conveyed it to my client as, of course, I must. Mr. Carr asked the Court for simply a hearing. And Judge, I think this goes far enough so as to say that Mr. Carr could not have possibly have made a knowing and intelligent decision to waive his hearing simply because he was promised one thing and received another. What was he promised again? He was promised 30 months, sir. And who promised him that? Well, I'm sorry, Judge, I don't want to . . . You don't really mean that, right? He wasn't promised anything. In fact, he was told no guarantees, right? The judge did not make a commitment, sir, and I said that myself in court. Nor did counsel make a commitment to him, right? And I was trial counsel, Judge. I did not make a commitment to him. So nobody promised him anything, and in fact, he was advised that the judge was not bound by the guidelines and was not bound by basically anything other than a maximum, right? I think if I were to pick a word, sir, and the words are very important in this case, I grant you. I think I would say I told my client that the Court was inclined at 30 months. But I certainly told . . . I certainly never said that my client absolutely and for sure was going to get 30 months. There's no question about that. Okay. Could you address the conflict here? The government suggested that a remand might be appropriate because we have the affidavit of your client, and we have his statements in the context of the hearing, which he and you gave somewhat different accounts of what the nature of your conversation about the 30 months. You keep using the word promise here. That's certainly what he heard. Yes, ma'am. Yeah, and that's what his statements reflect. But in terms of your own counsel to him, you know, it seems a little uncomfortable to resolve these factual disputes based on your representations to us now and in your brief. And I acknowledge that he wrote an affidavit saying that there's no conflict anymore. But I don't entirely understand how . . . what your thinking is about how you can represent him at this point. Ma'am, it's even more uncomfortable over on this side of the bench, believe me.  I think . . . I don't believe there's a conflict, but I think my toes are right up to the line. I discussed this at length with my client. Mr. Carr had some concerns about the same matter. And of course, as I speak about this, ma'am, I've got to be careful about what I say here. There's certain things I can't mention. Well, am I right in understanding that your client has now filed an affidavit in which he says he's in agreement with the statements, with the facts asserted in the brief? Yes, ma'am. And in the brief, you say that the district court opined that it would probably impose a sentence of 30 months. And the defendant was advised that such a sentence was not guaranteed. There was no question that it was not guaranteed. However, it was suggested by a federal district judge. And I think, Your Honor, that is highly persuasive to a man who never finished high school. Now, in terms of . . . I'd like to return to the conflict problem, because obviously that's a hot button with me. Ma'am, Mr. Carr actually said, and it appears in the transcript, that he was not promised this. There is no conflict between Mr. Carr and myself on that score. And again, we spoke about this at length. So I guess what I'm saying to you, Your Honor, and Judge, I used the wrong word. I did not mean to mislead the court. I guess what I want to say to you was, is it was a situation in which Mr. Carr found himself in hearing something that any defendant would want to hear under the circumstances. And I personally think it rose to a level of a boycott violation. He would reasonably believe that he was going to receive something in a neighborhood of 30 months. Not twice that. And certainly, an above the guideline sentence was never mentioned. Now, I realize in, you know, Rule 11 does not apply. As much as- And even in the Rule 11 context, a defendant's belief as to what sentence he might receive is, because that belief is frustrated at sentencing, but there was no false representation. That's not a basis for saying that a plea was involuntary. Actually, Your Honor, one of the things I would like to say is I've appeared in front of that trial court judge for 30 years. And I don't think he did anything that was to be faulted. I'm certainly not trying to throw mud upon the court. But I believe my client was misled. I think that is reasonable. When the change in sentence is that great, and we're not even in the range dictated by the federal sentencing guidelines anymore. Your Honor, I think that constitutes a boycott violation. I truly do. The only thing he's looking for, Your Honor, is a hearing. And I don't want to anticipate the arguments of my opponent, but I'm sure the court is going to hear that he was not a choir boy, and absolutely that is true. But the fault here is in not giving him his hearing. That's the problem, Judge, not the ultimate sentence. Well, do you want to address your second point? Whether the court adequately explained the sentence it gave? I'm sorry, ma'am? Didn't you also raise a point about the court's failure to explain the reasons for the 60 month term? Ma'am, it appears to me that the court relied on certain matters that were covered under the sentencing guidelines by his criminal history calculus. And in going over the guidelines and relying on that, it appears to me that the court essentially double dipped. I think there's nothing new in what the court said. This all had to do with prior calculations about what he did in the past. And quite frankly, Your Honor, I think that's somewhat unfair. One of the things we have to consider, though, in the over the guidelines sentence, Judge, I don't think the law is perfectly clear on the notification requirement to someone in a VOP hearing about going over the guidelines. I think the Burns case, I believe, goes to the prospect that the court under certain circumstances has to notify the defendant. As I recall, the Burns case goes to things like if the judge is going to rely on something that's not in the PSR, something along those lines. Now, I'm not suggesting that Burns is a perfect fit, Judge, but under these circumstances, when you have the 30 months floating around out there and then we go over the guidelines, I think the lead defendant was entitled to some kind of notice. And under those circumstances, I don't think there's a question, we'd have had a hearing, Judge. And then we wouldn't be here. One way or another, we wouldn't be here. Help me to recall the record. Didn't a month pass after the in-chambers conference at which the allusion was made, probably 30 months? And during that month period, your client was getting ready for that hearing, correct? Ma'am, we were getting ready for the hearing. He was informed of all of this. There was no surprise. And then there's, well, actually, Judge, there's a couple of adjournments, and I'm not sure at what juncture you're referring to. There were adjournments that had nothing whatsoever to do with this case. It just had to do with the court's business. But my client was informed of this, and yes, indeed, we were getting ready for a hearing. And I notified the court a couple of days in advance that he was willing to waive the hearing based upon the premise that there would be something in the neighborhood of 30 months applied. You informed the court that it was based on the fact that the sentence would be something in the neighborhood of 30 months? I did not inform the court of that. I was relying on the court's representations and nothing more, sir. Okay, thank you, ma'am. Thank you, sir. May it please the court, Karina Schomburger for the United States. If the court accepts the facts that Mr. Carr lays out in his appeal brief, then the district court's judgment should be affirmed. There is certainly sufficient facts in the record for the district court to accept that Mr. Carr voluntarily admitted to the violations of supervised relief. To the extent he had some subjective belief as to what his sentence might be, that's not enough to show that he made admissions involuntarily, even in the more stringent context of a guilty plea, this court has found that that type of subjective belief is insufficient to show a lack of voluntariness. And the case that the government cites in its brief is the United States versus, or XREL, Lafay on just that point. The concern here, of course, is that the facts in Mr. Carr's court because they differ somewhat from what is represented in the record before the district court. In this court's order denying the government's remand motion, it describes the relief that the government seeks somewhat more broadly than what the government is asking. What the government is looking for here would be an inquiry into whether there is a conflict between the attorney and his client. Because the argument here about involuntariness is based on the representation the attorney made to his client that the district court had suggested a certain sentence but did not guarantee it. Why is Mr. Carr's affidavit enough to put that concern to rest? The main concern is that he received counsel from the same attorney that represented him before the district court. And it was submitted through that counsel. If there wasn't any concern about whether a conflict exists, I agree that what Mr. Carr says in his affidavit would be sufficient, basically. I see the facts as they're laid out in the brief, and I agree with them. And if that's the case, then all of the arguments in the government's brief would apply, and again, we would ask that the judgment be affirmed. The central concern is that Mr. Carr's involuntariness argument would be much stronger if he were to say that his attorney had told him that, in fact, a sentence had been promised. But if that were the case, his attorney would be exposed to potential ineffectiveness claims, regardless of whether the judge had actually made the promise or not. And so that is a conflict that doesn't appear to be resolved. And again, if the affidavit is viewed as sufficient by the court, then the government is comfortable with that. It would be entirely comfortable with it if that affidavit had been submitted through counsel who was clearly conflict free. Regarding the explanation that the district court gave for its sentence, unless the panel has any questions about that, then the government would rely on the arguments set forth in his brief. And unless there are any further questions on the merits of the voluntariness claim, then the government will rest on the remaining arguments there as well. Thank you. I am. Thank you both, and we'll take it under advisement.